OPINION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Lucas County Court of Common Pleas, Domestic Relations Division.
Linda K. Wesson, and appellee, Keith E. Wesson, were divorced by decree in July 1989. Keith Wesson was ordered to pay Linda Wesson spousal support for sixty months and child support for the parties' four minor children.
In 1994, appellant, the Lucas County Child Support Enforcement Agency ("LCCSEA"), filed a motion on behalf of Linda Wesson for a lump sum judgment, contending that Keith Wesson was over $63,000 in arrears in his support payments. On November 23, 1994, the domestic relations court granted that motion and entered a judgment of $71,667.80 against Keith Wesson.
On June 23, 1998, LCCSEA and Linda Wesson filed a motion requesting a temporary restraining order and injunctive relief. They alleged that John Danehy, the general manager of the Sylvania Country Club, was holding, as a security deposit, approximately $5,000 of Keith Wesson's money. The plaintiffs asked the court to enjoin the country club from "disbursing, distributing, alienating, tendering to, encumbering or otherwise disposing of any and all sums which are now due or which may become due" to Keith Wesson until such time that Keith Wesson discharged any and all arrearages. According to an affidavit in support of the motion, Wesson was in arrears on his child support obligation in the amount of $17,946.56. On June 23, 1998, the trial court issued a temporary restraining order enjoining the Sylvania Country Club from disbursing any of the security deposit until further order of the court.
In their memorandum in support of their motion for an injunction, plaintiffs asserted that Keith Wesson was still in arrears on his child support obligation in the amount of $18,804.56 and that the Sylvania County Club should be ordered to segregate and pay over to the LCCSEA the $5,000 security deposit.
They further maintained that Keith Wesson had assigned his interest in the security deposit to his attorney, Jeffrey D. Levy, on June 13, 1998. Plaintiffs asked the court to determine that, pursuant to R.C. 1336.04, et seq., the transfer was fraudulent and must be set aside.
In his memorandum in opposition, Keith Wesson argued that he had several cases pending against him as of June 12, 1998. These included five felony charges of nonsupport in the Lucas County Court of Common Pleas. Appellee alleged that he had no available funds to pay his attorney a retainer; therefore, he assigned his interest in the security deposit to Levy. Wesson claimed that the transfer was not fraudulent under R.C. Chapter 1336 and, in any event, LCCSEA and Linda Wesson had no right to a prejudgment attachment of the security deposit. Both sides of this dispute also filed reply briefs.
A hearing on this matter was scheduled for November 4, 1998. On October 28, 1998, Keith Wesson filed a subpoena ducestecum demanding a complete copy of LCCSEA records involving the Wesson case from January 1, 1996 to the present. LCCSEA filed a motion to quash, asserting that it was not served with the subpoena until November 2, 1998, that Civ.R. 34(B) allowed the agency a greater time to respond and that the time allowed before trial was insufficient to allow the keeper of the records to comply. In its motion, LCCSEA maintained that a motion to disqualify Keith Wesson's counsel was before the court. We are, however, unable to locate a written motion to disqualify counsel in the record on appeal.
At the hearing on November 4, 1998, the court first addressed the motion to disqualify counsel, holding "I'm going to take the motion for disqualification under advisement pending how the testimony develops." The court then turned to LCCSEA's motion to quash. LCCSEA stated that the Wesson file was "a mess" due to all of the enforcement procedures taken by the agency. LCCSEA further claimed that the keeper of the records was in Columbus. Keith Wesson's attorney then interposed, saying that he would be willing to review the records after the hearing was over. When the court indicated that, as a public agency, the LCCSEA was required to keep its records in order so the agency could pursue its case, counsel for LCCSEA stated that the records from the date of the assignment were in order. Counsel also asserted that after LCCSEA determined what records were available, Levy would have to come to the agency to review them. At that point, the court found:
 "All right. Since the Agency doesn't want to produce the records, I'll dismiss all the motions filed by the agency with prejudice."
The trial judge filed his final judgment on November 5, 1998. That judgment was journalized on November 10, 1998. In his judgment entry the trial judge queried, among other things, whether LCCSEA could prove Keith Wesson was in arrears on his support obligation if its records were in "disarray" and no witness was available to testify as to those records. The court concluded: "Without a witness, its records are inadmissible and its credibility made suspect by the statements of the attorney."
The court also determined that to prevail on a fraudulent transfer claim brought pursuant to R.C. 1336.04(A), the claimant must prove that it is a creditor, as defined in R.C. 1336.01(C) and (D), of the transferor. The court then held:
 "Without the records and witnesses to the records, the Agency cannot show that it has a claim against or is a creditor of Defendant. Therefore, it cannot prevail on its underlying motion based on fraudulent transfer."
The domestic relations court denied the motion to quash, denied the motion for injunctive relief and rescinded the temporary restraining order.
LCCSEA appeals[1] that judgment and sets forth the following assignments of error:
 "I. Whether the Court below abused its discretion by dismissing all CSEA motions with prejudice (effectively dissolving a temporary restraining order), thus imposing the harshest disposition available without first ruling on the Agency's Motion to Quash Subpoena."
 "II. Whether the Court erred as a matter of law in determining that the Agency `must show that it is a creditor of the transferor' to prevail on a claim for fraudulent transfer."
 "III. Whether the trial court abused its discretion by dismissing, with prejudice [sic] Agency's Motion to Disqualify Counsel (Assignee [of] [for] Appellee [sic]."
Before turning to appellant's assignments of error, we must address the court's dismissal of this case, with prejudice. A court, while having the inherent authority to control proceedings before it, cannot dismiss a case with prejudice absent some authority to do so. Although appellant does not directly address this issue, we find that the court committed plain error in dismissing this cause.
"In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." Goldfuss v. Davidson (1997), 79 Ohio St.3d 116, syllabus.
Neither Civ.R. 34 (production of documents during discovery) nor Civ.R. 45 (subpoenas) authorize the dismissal of a case, especially with prejudice, for failure to comply with those rules. Civ.R. 37 does permit the dismissal of a case for failure to comply with discovery procedures but only after the sanctioned party fails to obey a court order requiring that party to comply. See Civ.R. 37(A) and (B)(2)(c). Thus, we must look to the court's judgment and other pertinent civil rules to ascertain the authority underlying the dismissal of this case.
The essence of the trial court's judgment is that LCCSEA was unable or unwilling to present the necessary evidence at trial to demonstrate that the agency was a creditor of Keith Wesson for the purpose of determining whether the assignment of the security deposit was a fraudulent transfer under R.C. Chapter 1336. While this is an important issue, the trial court's holding also goes to the underlying action in this case, the claim for injunctive relief, and the ability of the LCCSEA to commence and pursue such an action.
Several statutory provisions designate a county child support enforcement agency as the record keeper and enforcer of spousal and child support obligations. See e.g., R.C. 2301.36, R.C. 2301.37; R.C. 3113.21; R.C. 5101.319. Of particular interest to the instant case is R.C. 3113.211, which provides:
 "Whenever an obligor fails to make any payment required by a child support order, the obligee or a child support enforcement agency acting on behalf of the obligee may bring an action in the court of common pleas that issued the support order to obtain a judgment on the unpaid amount. Any judgment obtained under this section may be enforced in the same manner as any other judgment of a court of this state."
Furthermore, after receiving notice that an obligor is in default, the obligee has the option of applying to the local CSEA requesting that the agency maintain an action on his or her behalf to obtain a judgment and to execute on that judgment by several different methods. See R.C. 2301.38(A)(1). Thus, there is authority for the action taken by LCCSEA.
Nevertheless, the statutes expressly require the existence of a judgment prior to enforcement. Thus, in order to seek injunctive relief, LCCSEA also had to demonstrate that a judgment existed. Even though we are aware of the fact that an approximately $71,000 lump sum judgment was awarded in 1994, we cannot say that the almost $18,000 arrearage alleged in LCCSEA's motion for injunctive relief is part of that judgment. Rather, LCCSEA was required to offer some evidence that this was the enforcement of the 1994 judgment or, depending on the facts of this case, to seek a lump sum judgment in the amount of the new arrearage.
Likewise, R.C. 1336.07(A) allows a creditor or a child support enforcement agency to, on behalf of a support creditor, file an action for relief arising out of a transfer or obligation that is fraudulent under either R.C. 1336.04 or R.C. 1336.05. A "creditor" is defined as "a person who has a claim." R.C.1336.01(D). A "claim" means a "right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." R.C. 1336.01(C). Thus, to be deemed as acting on behalf of a support "creditor" LCCSEA had to demonstrate that Linda Wesson had a right to payment, that is, that Keith Wesson was in arrears on his child support. In the trial court's opinion, LCCSEA was not ready and/or willing to prove the right to payment on the day of the hearing on this matter. Therefore, the court dismissed the entire case, with prejudice[2].
The foregoing analysis of the trial court's journal entry and applicable law convinces this court that the instant case was dismissed for a failure to prosecute, pursuant to Civ.R. 41(B)(1). Accord, Wray v. Tattersall (Sept. 18, 1998), Lucas App. No. L-98-1030, unreported (case dismissed because plaintiff "failed to prepare the case in a timely manner").
Civ.R. 41(B)(1) provides:
 "Failure to prosecute. Where the plaintiff fails to prosecute, or comply with these rules or any court order, the court upon motion of a defendant or on its own motion may, after notice to plaintiff's counsel, dismiss an action or a claim."
A dismissal with prejudice is an extremely harsh sanction and contrary to the fundamental preference for deciding cases on their merits. Jones v. Hartranft (1997), 78 Ohio St.3d 368,371. Accordingly, dismissal of a case is warranted only if the conduct of a party or his counsel is sufficiently negligent, irresponsible, contumacious, or dilatory as to provide substantial grounds for the dismissal. Tokles Son, Inc. v. MidwesternIndemn. Co. (1992), 65 Ohio St.3d 621, 632. The power to dismiss a case is within the trial court's discretion. Our review is limited to determining whether the lower court abused that discretion. An abuse of discretion will be found if the lower court's ruling evinces an unreasonable, arbitrary, or unconscionable attitude. Quonset Hut, Inc. v. Ford Motor Co.
(1997), 80 Ohio St.3d 46, 47.
Here, LCCSEA failed to comply with Ohio Rules of Civil Procedure by not producing subpoenaed records. LCCSEA did, however, file a motion to quash the subpoena. On the other hand, LCCSEA manifested an inability to perceive that it could not proceed with its case on the day of trial, and, instead of requesting a continuance so that the needed records and the keeper of those records could be produced, continued to argue with the court over appellee's ability to review those records. While this behavior could be labeled negligent, contumacious and irresponsible, we do not believe, after reviewing the remainder of the record, that it was substantial enough to warrant the harsh sanction of an involuntary dismissal with prejudice.
Of greater importance is the fact that the trial court failed to provide appellant with notice of its intent to dismiss the case. Notice is a prerequisite to dismissal for failure to prosecute under Civ.R. 41(B). Sazimo v. Chalko (1999), 86 Ohio St.3d 151,155. Logsdon v. Nichols (1995), 72 Ohio St.3d 124,128. Notice is required in order to provide the party in default with an opportunity to explain the default or to correct it or to explain why the case should not be dismissed with prejudice.Logsdon, at 128, quoting McCormac, Ohio Civil Rules Practice (2 Ed. 1992), 357, Section 13.07. LCCSEA had no notice of the court's intent to dismiss its case with prejudice. Accordingly, we find that the trial court abused its discretion in dismissing this case. Therefore, the judgment of the domestic relations court shall be reversed because this is one of those extremely rare cases where the court's action seriously affects the basic fairness of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.
We now turn to appellant's assignments of error.
In its first assignment of error, LCCSEA asserts the domestic relations court abused its discretion by dismissing this case with prejudice without ruling on its motion to quash the subpoena duces tecum.
Appellant is referring to the court's failure to specifically rule on its motion to quash at the close of the November 4, 1998 hearing. However, a trial court speaks only through its journal entry and not through its oral pronouncements.State v. King (1994), 70 Ohio St.3d 158, 162; State ex rel.Worcester v. Donnellon (1990), 49 Ohio St.3d 117, 118; State v.Waddell (1995), 106 Ohio App.3d 600, 604. In this instance, the court did expressly deny the motion to quash in its November 10, 1998 journal entry. Thus, appellant's first assignment of error as it relates to this aspect of the court's conduct is found not well-taken.
Although appellant does not assign the denial of the motion to quash the subpoena as error, LCCSEA argues, under its first assignment of error, that the motion should have been granted.
The applicable provision of the Ohio Civil Rules of Civil Procedure is Civ.R. 45. A trial court has discretion in matters pertaining to discovery. In exercising that discretion, the court must balance the relevancy of the discovery requests, the requesting party's need for the discovery, and the hardship upon the party from whom discovery was requested. Thompson v.Curtin (May 15, 1997), Franklin App. No. 96APE09-1187, unreported, following Stegawski v. Cleveland Anesthesia Group,Inc. (1987), 37 Ohio App.3d 78.
Civ.R. 45(C)(3)(a) states that a court shall quash a subpoena if the subpoena "fails to allow reasonable time to comply." Keith Wesson's subpoena requested the production of all LCCSEA support records dating back to 1996. In its motion to quash, LCCSEA stated in its motion to quash that the subpoenas were served on November 2, 1998, two days before trial. Nevertheless, it is apparent that the court never considered this issue, but chose to deny the motion to quash because it was of the opinion that LCCSEA needed these records to prove its case. Based on our foregoing discussion of the necessity of the records, we cannot say that the trial court's attitude was unreasonable, arbitrary or unconscionable in doing so. Therefore, LCCSEA's first assignment of error is found not well-taken.
Having previously decided that, in order to prevail on its fraudulent transfer claim, the LCCSEA needed to demonstrate that the agency was acting on behalf of a support creditor, LCCSEA's second assignment of error is found not well-taken.
LCCSEA, in its third assignment of error, asserts that the trial court abused its discretion in denying its motion to disqualify opposing counsel. While the domestic relations court did not expressly overrule this motion in its judgment entry, it implicitly denied the motion when it dismissed the entire case.Maust v. Palmer (1994), 94 Ohio App.3d 764, 769 (When a trial court enters judgment without expressly determining a pending motion, the motion is impliedly overruled.).
Under this assignment of error, appellant makes several contentions arguing that the assignment of the security deposit was a fraudulent transfer. These contentions go to the merits of one of the issues before the trial court and were not considered by the trial court in reaching its decision to dismiss this case with prejudice. Further, these arguments are not germane to this court's disposition of appellant's third assignment of error. We shall therefore ignore these arguments at this juncture and address only the issue raised by this assignment. With regard to the issue of disqualification of counsel, LCCSEA asserts that the basis for its motion was an alleged violation of DR 5-103.
A trial court has broad discretion in the consideration of a motion to disqualify counsel. Spivey v. Bender (1991),77 Ohio App.3d 17, 22. Absent an abuse of that discretion, a reviewing court will not overturn the lower court's decision on the motion. Id.
Canon 5 of the Code of Professional Responsibility, seeks to prevent a conflict of interest between an attorney and his client. The ethical consideration relevant to this case reads, in part:
"EC 5-7
 "The possibility of an adverse effect upon the exercise of free judgment by a lawyer on behalf of his client during litigation generally makes it undesirable for the lawyer to acquire a proprietary interest in the cause of action of his client or otherwise to become financially interested in the outcome of the litigation. However, it is not improper for a lawyer to protect his right to collect a fee for his services by the assertion of legally permissible liens, even though by doing so he may acquire an interest in the outcome of the litigation." (Emphasis added.)
The specific disciplinary rule, DR 5-103, cited by appellant provides, in material part:
 "(A) A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation he is conducting for a client, except that he may:
 "(1) Acquire a lien granted by law to secure his fee or expenses."
Although we were unable to find an Ohio case construing "acquire a lien granted by law to secure his fee or expenses," the language of EC 5-7 suggests that even when an assignment for the purpose of securing the payment of legal fees provides the attorney with an interest in the outcome of the litigation, he or she is not in violation of DR 5-103(A).
In Skarecky Horenstein, P.A. v. 3605 North 36th St.Co. (1991), 170 Ariz. 424; 825 P.2d 949, the court was faced with the issue of whether the assignment of a beneficial interest in a deed of trust was unenforceable because it violated the Arizona equivalent of DR 5-103(A). The court determined that an assignment that creates a security interest in specified collateral in favor of an attorney for payment of his fees did not violate the rule. Id. at 426. However, the court warned that the assignment could not be absolute, i.e., provide the attorney with a proprietary interest in the cause of action. Instead, the assignment must be limited to security for fees. Id. See, also,Burk v. Burzynski (Wyo. 1983), 672 P.2d 419 (assignment of client's potential recovery to secure payment of attorney fees expressly stated that it was for this purpose); In re May (1975),96 Idaho 858, 538 P.2d 787 (assignment of equity in home by client to attorney violated DR 5-103 because the assignment was absolute, that is, did not specify that it was security for attorney fees).
Applying these principles to the case before us, we find that this issue must be returned to the trial court. As stated before, the written motion to disqualify counsel is not in the record of this case. There is also a dearth of evidence in the record below concerning this assignment. Nonetheless, at the hearing on this matter, appellant's counsel stated he wanted "Mr. Levy disqualified as Counsel of record for the reason that obviously he's the assignee and he acquired an interest in the case." Counsel for LCCSEA also wanted Mr. Levy to testify because, according to counsel, the assignment had neither language with regard to consideration nor language indicating that the assignment was for legal fees. From the court's comments it appears that the judge did not fully consider DR 5-103, but, rather, reserved its final decision on the motion to disqualify dependent on Mr. Levy's testimony. That testimony was never adduced. In fact, the alleged assignment of Keith Wesson's interest in the security deposit to Mr. Levy was never even offered into evidence.
Based on the state of the record of this case, we must find that the implicit denial of the motion to disqualify appellee's counsel was an abuse of discretion. Appellant's third assignment of error is found well-taken. This does not mean, however, that the motion should have been granted. If this case proceeds on remand, the trial court must consider the assignment in light of the law set forth above and then determine whether a violation, if any, of DR 5-103 warrants the disqualification of Mr. Levy as Keith Wesson's attorney.
The judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, is reversed, and this cause is remanded to that court for further proceedings consistent with this judgment. Appellant, LCCSEA, and appellee, Keith Wesson, are ordered to pay, in equal shares, the costs of this appeal.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Melvin L. Resnick, J.
 James R. Sherck, J.
 Richard W. Knepper, J.
CONCUR.
[1] Linda Wesson did not file a notice of appeal from the court's judgment and is, therefore, not a party to this appeal.
[2] The judgment entry that is the subject of this appeal does not contain the words "without prejudice." In the absence of any language specifying a dismissal without prejudice, the dismissal is an adjudication on the merits. Civ.R. 41(B)(3);Eichenberger v. Sharp(Nov. 1, 1994), Franklin App. No. 92APE02-271, unreported.